IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

FILED
JUL 0 2 2010
U.S. DISTRICT COURT
CLARKSBURG, WV 26301

WILLIE LEE MOSLEY,

    Petitioner,

v.                                                             Civil Action No. 3:09cv6
                                                              Criminal Action No. 3:07cr44
                                                              (Judge Bailey)

UNITED STATES OF AMERICA,

    Respondent.

## OPINION/REPORT AND RECOMMENDATION

### I. Factual and Procedural History

#### A. Petitioner's Federal Habeas Proceedings

On January 26, 2009, the *pro se* petitioner, Willie Lee Mosley, filed a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody. On March 12, 2009, the undersigned determined that summary dismissal of this case was not warranted and the respondent was directed to file an answer. The respondent filed an answer on April 10, 2009. The petitioner filed his reply on May 21, 2009. This case is before the undersigned for a report and recommendation pursuant to LR PL P 83.15, et seq.

#### B. Conviction and Sentence

Petitioner was the sole individual named in two counts of a two count indictment filed on May 15, 2007 in the Northern District of West Virginia. Count One charged that the petitioner distributed narcotics in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 841(b)(1)(C). Count Two

charged that the petitioner possessed narcotics with the intent to distribute them, in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 841(b)(1)(C). See CR. dckt. 1.

On January 2, 2008, petitioner signed a plea agreement by which he agreed to plead guilty to Count One of the indictment, in which he was charged with distributing 2.34 grams of heroin. See Plea Agreement (CR. dckt. 33) at ¶ 1. In the plea agreement, the petitioner agreed to be exposed to a maximum penalty of not more than twenty years imprisonment. *Id.* at ¶ 2. Furthermore, the petitioner waived his rights to appeal or collaterally attack his sentence. *Id.* at ¶ 10. Specifically, the petitioner's plea agreement contained the following language regarding waiver:

> 10. Defendant is aware that Title 18, United States Code, Section 3742 affords a defendant the right to appeal the sentence imposed. Acknowledging all this, and in exchange for the concessions heretofore made by the United States in this plea agreement, Defendant knowingly and voluntarily waives the right to appeal any sentence which is within the maximum provided in the statute of conviction or in the manner in which that sentence was determined on any ground whatever, including those grounds set forth in Title 18, United States Code, Section 3742. Defendant also waives his right to challenge his sentence or the manner in which it was determined in any collateral attack, including but not limited to, a motion brought under Title 28, United States Code, Section 2255 (habeas corpus). The United States does not waive its right to appeal the sentence; however, in the event that there would be an appeal by the United States, Defendant's waiver contained in this paragraph will be voided provided Defendant complies with the provisions of Rule 4(b)(I)(A)(ii) of the Federal Rules of Appellate Procedure.

On January 4, 2008, the petitioner entered his plea in open court. During the petitioner's plea hearing, the Court confirmed that petitioner had not taken any drugs or alcohol within twenty-four hours of the hearing, and that he could read, write and understand the English language. See Transcript of Plea Hearing (CR. dckt. 57) at 3. Next, the Court advised the petitioner that it would ask the him many questions during the plea proceedings. *Id.* Petitioner acknowledged that if he had

any questions, concerns, or required additional explanation during the proceedings, he would stop the Court and confer with his attorney. *Id.*

The Court went on to verify with petitioner that he was fifty-three years old, had completed eleventh grade, and was free of hearing impairment or other disabilities that would prevent him from participating fully in the proceedings. *Id.* at 4. Next, the court verified with petitioner that he was participating in the proceedings in order to enter a guilty plea pursuant to the plea agreement he had previously signed. *Id.*

Next, the Court notified petitioner that the United States Attorney ("respondent") would be reviewing each paragraph of the plea agreement in order to ensure that the Court and the petitioner understood it. *Id.* at 5. Petitioner acknowledged that he would listen carefully to the plea review. *Id.* After the United States Attorney completed the plea review, petitioner affirmed that he understood the terms of the plea agreement are recommendations to the Court and that the Court could reject those recommendations at its discretion without permitting the petitioner to withdraw his guilty plea. *Id.* at 12.

The Court went on to verify with petitioner that he understood that he was giving up the majority of his appellate rights and then detailed those rights, noting specifically the right to file a habeas corpus petition challenging the legal validity of the guilty plea sentence. *Id.* at 12-13. Both the petitioner and his attorney stated that the petitioner understood the consequences of his guilty plea. *Id.* Next, petitioner stated that he had reviewed the plea agreement in detail with his attorney before he signed it. *Id.* at 13. Finally, petitioner stated that the plea agreement represented the full and complete agreement between himself and the respondent. *Id.*

The petitioner next confirmed to the Court that he had received and reviewed the original Indictment with his attorney, and requested that the Court summarize the indictment for him. *Id.* at 13-14. After the Court summarized Count one of the indictment out loud, the petitioner stated that he understood the statute under which he had been charged, and that he understood the elements the respondent would need to prove if at trial. *Id.* at 14. The petitioner also confirmed that he understood that the maximum sentence for any count in the indictment is imprisonment of not more than twenty years, and that he had discussed the implications of the sentencing guidelines with his attorney. *Id.* at 15-16.

Next, the petitioner stated that he understood that the Court would not be able to determine a guideline sentence until after a presentence report had been completed, and that he would have the chance to object to the report once it was completed. *Id.* at 16. The petitioner further stated that he understood that the sentence imposed on him may be different from any estimate provided by his attorney, and that the sentencing court may also take into account any relevant conduct when making its sentencing determination. *Id.* at 16-17. The petitioner also stated that he understood that the court may depart from the sentencing guidelines at its discretion. *Id.* at 17.

The petitioner continued, restating that he understood that his appeal rights had been severely limited by the terms of the plea agreement. *Id.* The petitioner further stated that he understood that even if the sentence is longer than he anticipated, under the agreement he would have no right to withdraw his guilty plea. *Id.* The Court then detailed the rights that petitioner would be giving up by pleading guilty. *Id.* at 18. The petitioner stated he understood that by pleading guilty, he was giving up his right to a jury trial, and the right to maintain his plea of not guilty. *Id.* at 18-19. The Court then found that petitioner understood the consequences of pleading guilty. *Id.* Next, the

respondent proffered evidence in support of its indictment against the petitioner. *Id.* at 19-22. When given the opportunity to do so, the petitioner did not challenge or add to the respondent's evidence. *Id.* at 22.

Finally, the petitioner plead guilty to count one of the indictment. *Id.* The petitioner stated that he made the plea of his own free will, that the plea was not the result of promises made to him outside of the plea agreement, and that nobody had predicted or promised what his exact sentence would be[1]. *Id.* at 23. Moreover, when asked whether his attorney had done a good job representing him, the petitioner answered "Yes Sir." *Id.* at 2. When asked whether his attorney had neglected anything, or done anything wrong with regard to his representation, the petitioner said "No Sir." *Id.* at 24. Lastly, the petitioner stated for the record that he was guilty of the charge in Count One of the indictment. *Id.* at 24. Based upon the petitioner's statements and the respondent's proffer of evidence, the Court found that the petitioner's plea was made freely and voluntarily and that the petitioner had full knowledge and understanding of the consequences of the plea. *Id.* The Court accepted the petitioner's plea of guilty to Count One of the indictment against him. *Id.*

On April 2, 2008, the petitioner appeared before the Court for sentencing. See Sentencing Transcript (CR. dckt. 55) at 1. During the sentencing hearing, the petitioner stated that he had received the presentence report ("PSR"), and gone over it with his attorney. *Id.* at 4. Moreover, the petitioner, through his attorney, entered four objections to the presentence report. *Id.* at 4-8. After

---

[1] The record indicates that throughout the proceedings, the petitioner gave the Court yes and no answers where appropriate. For example, when asked whether anyone had promised or predicted the exact sentence, the petitioner answered "No Sir." *Id.* at 23.

5

overruling two of the petitioner's objections and mooting two others, the Court accepted the PSR. *Id.* at 8.

The petitioner next made a statement to the Court, apologizing for what he had done and noting that his attorney had done an "outstanding job" throughout the matter. *Id.* at 18. The Court sentenced the petitioner to 151 months of incarceration, stating that in deciding the sentence it had considered all relevant information under 18 U.S.C. § 3553 and the sentencing guidelines, such as a three level decrease in the petitioner's offense level as recommended by the respondent and the petitioner's drug rehabilitation. The Court also pointed to the petitioner's prior criminal record as a significant factor in determining the final sentence. *Id.* at 22-26. The Court dismissed Count Two of the indictment. *Id.* at 26.

## C. <u>Direct Appeal</u>

Petitioner entered a direct appeal on April 2, 2008 (CR dckt. 45,52). The United States Court of Appeals for the Fourth Circuit dismissed the appeal on September 12, 2008 (CR dckt. 58,59).

## D. <u>Federal Habeas Corpus Petition</u>

### <u>Petitioners' Contentions (CR dckt. 65, CV dckt. 1)</u>

(1) Petitioner's Sixth Amendment right to effective assistance of counsel was violated during the plea.

(2) Petitioner's Sixth Amendment right to counsel was violated during the presentence report interview.

(3) The sentencing court failed to comply with 18 U.S.C. § 3553(a) guidelines, depriving Petitioner of a fair sentencing.

6

(4) The sentencing court failed to verify that the petitioner and his attorney read the PSR and discussed it, as required by FED. R. CRIM. P. 32(i)(1)(A).

### Government's Response (CR dckt. 73)

(1) Petitioner knowingly and voluntarily waived his right to bring a motion pursuant to 28 U.S.C. § 2255, thus his motion must be dismissed.[2]

(2) Even if the petitioner's right to make a motion for writ of habeas corpus under 28 U.S.C. § 2255 was not waived, it is without merit and must be denied for the following reasons:

   a. Petitioner's claim of ineffective assistance of counsel is not supported by the record.

   b. Petitioner's Sixth Amendment claim that he was denied the right to counsel by the Probation Officer during the PSR is not supported by the record.

   c. Petitioner's claim that the sentencing court deprived him of fair sentencing is not supported by the record.

   d. Petitioner's claim that the sentencing court failed to verify that his attorney read and discussed the PSR with him is not supported by the record.

### Petitioner's Reply (CR dckt. 77)

In reply to the respondent's response, the petitioner reasserts three of his four previous claims and raises the following additional claim:

(1) The waiver of appeal is invalid because the Court informed the petitioner, during sentencing, that he had a right to appeal, thus superseding the waiver.

---

[2] The Government notes in its response that it recognizes the possibility that certain ineffective assistance of counsel claims may be excepted from the waiver provision.

7

## II. Analysis

In the Fourth Circuit, "[a] petitioner collaterally attacking his sentence or conviction bears the burden of proving that his sentence or conviction was imposed in violation of the Constitution or laws of the United States, that the court was without jurisdiction to impose such a sentence, that the sentence exceeded the maximum authorized by law, or that the sentence otherwise is subject to collateral attack. 28 U.S.C. § 2255. A motion collaterally attacking a petitioner's sentence brought pursuant to § 2255 requires the petitioner to establish his grounds by a preponderance of the evidence." Sutton v. United States of America, 2006 WL 36859 *2 (E.D.Va Jan. 4, 2006)(Citing Miller v. United States, 261 F.2d 546, 547 (4th Cir. 1958); United States v. Allgood, 48 F. Supp. 2d 554, 558 (E.D. Va. 1999)).

### A. Waiver

"[T]he guilty plea and the often concomitant plea bargain are important components of this country's criminal justice system. Properly administered, they can benefit all concerned." Blackledge v. Allison, 431 U.S. 63, 71 (1977). However, the advantages of plea bargains "can be secure . . . only if dispositions by guilty plea are accorded a great measure of finality." *Id.* "To this end, the Government often secures waivers of appellate rights from criminal defendants as part of their plea agreement." United States v. Lemaster, 403 F.3d 216, 220 (4th Cir. 2005).

In United States v. Attar, 38 F.3d 727 (4th Cir. 1994), the Fourth Circuit found that "a waiver-of-appeal-rights provision in a valid plea agreement is enforceable against the defendant so long as it is the result of a knowing and intelligent decision to forgo the right to appeal." Attar at 731. The Fourth Circuit then found that whether a waiver is knowing and intelligent "depends upon the particular facts and circumstances surrounding [its making], including the background, experience, and conduct of the accused." *Id.* After upholding the general validity of a waiver-of-appeal-rights provision, the Fourth Circuit noted that even with a waiver-of-appeals-rights provision, a defendant may obtain appellate review of certain limited grounds. *Id.* at 732. For instance, the Court noted that a defendant "could not be said to have waived his right to appellate review of a sentence imposed

in excess of the maximum penalty provided by statute or based on a constitutionally impermissible factor such as race." *Id.* Nor did the Court believe that a defendant "can fairly be said to have waived his right to appeal his sentence on the ground that the proceedings following the entry of the guilty plea were conducted in violation of the Sixth Amendment right to counsel." *Id.*

Subsequently, in <u>United States v. Lemaster</u>, <u>supra</u>, the Fourth Circuit saw no reason to distinguish between waivers of direct appeal rights and waivers of collateral attack rights. <u>Lemaster</u>, 403 F.3d at 220. Therefore, like waiver-of-appeal-rights provision, the Court found that the waiver of the right to collaterally attack a sentence is valid as long as it is knowingly and voluntarily made. *Id.* And, although, the Court expressly declined to address whether the same exceptions apply since Lemaster failed to make such an argument, the court stressed that it "saw no reason to distinguish between waivers of direct-appeal rights and waivers of collateral-attack rights." *Id.* at n. 2.

Based on these cases, ineffective assistance of counsel ("IAC") claims are barred by a valid waiver, to the extent that the facts giving rise to the claims occurred prior to the defendant entering his guilty plea. Only claims arising after the entry of the guilty plea may fall outside the scope of the waiver. <u>Lemaster</u>, 403 F.3d at 732 (it cannot be fairly said that a defendant "waived his right to appeal his sentence on the ground that the proceedings following entry of the guilty plea were conducted in violation of the Sixth Amendment right to counsel, for a defendant's agreement to waive appellate review of his sentence is implicitly conditioned on the assumption that the proceedings following entry of the plea will be conducted in accordance with constitutional limitations").

Therefore, when reviewing an IAC claim in a case where there is a waiver of collateral-attack rights in a plea agreement, we must first determine whether there is valid waiver. In doing so,

> The validity of an appeal waiver depends on whether the defendant knowingly and intelligently agreed to waive the right to appeal. Although this determination is often made based on adequacy of the plea colloquy -- specifically, whether the district court questioned the defendant about the appeal waiver – the issue ultimately is evaluated by reference to the totality of the circumstances. Thus, the determination must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background,

9

experience, and conduct of the accused.

United States v. Blick, 408 F.3d 162, 169 (4th Cir. 2005) (internal citations and quotations omitted). In other words, the Court must examine the actual waiver provision, the plea agreement as a whole, the plea colloquy, and the defendant's ability to understand the proceedings. *Id.* If the Court finds that the waiver is valid, any IAC claims arising prior to the plea agreement are barred by the waiver.

Here, the record fully establishes that the petitioner knowingly and intelligently entered into a plea agreement with the respondent. First, the plain language of the signed plea agreement shows that the petitioner agreed to waive the right to appeal any sentence that is within the statutory maximum, and agreed to waive the right to challenge his sentence by any collateral attack (e.g. 28 U.S.C. § 2255). The sentence of 151 months is within the agreed to statutory maximum (240 months).

The plea agreement is signed by petitioner and his attorney, and is dated two days prior to the plea hearing. See CR. dckt. 33 at 10. What's more, paragraph thirteen has been stricken from the plea agreement and is initialed by petitioner, his attorney, and the respondent, further suggesting that petitioner reviewed the agreement alongside his attorney. *Id.* at 4.

As detailed above, during the plea hearing, the petitioner stated that he had reviewed the plea agreement with his attorney, and that he understood the implications of waiving his right of appeal and his right to bring a § 2255 claim. Moreover, the respondent read the plea agreement aloud for the Court and the petitioner. The petitioner was advised to stop and ask questions at any time during the preceding, but did not do so. The Court did, however, summarize the indictment at the request of the petitioner. The Court also summarized what rights the petitioner was waiving, and specifically detailed the implications of waiving the right to a jury trial. The petitioner, when asked by the Court, stated that his attorney had been helpful and non-negligent. Lastly, the Court verified with the petitioner that he was making the plea agreement of his own free will, and not due to outside influence, estimation, or promise of leniency.

At the sentencing hearing, petitioner took the opportunity to address the Court. During his

allocution, the petitioner again stated that his counsel had been helpful throughout the proceedings. As the respondent also notes in its response, the petitioner did not raise any issues concerning the plea agreement or the plea hearing during his allocution.

"If an appropriately conducted Rule 11 proceeding is to serve a meaningful function, on which the criminal justice system can rely, it must be recognized to raise a strong presumption that the plea is final and binding." United States v. Lambey, 974 F.2d 1389, 1394 (4th Cir. 1992). For the above reasons, the undersigned finds that the petitioner entered into the plea agreement knowingly and intelligently. Because the petitioner knowingly and intelligently waived his rights to appeal or to bring a § 2255 claim, the waiver is valid.

**B. Merits.**

Even if the petitioner's appeal and collateral attack rights had not been waived, the undersigned alternately finds that his claims fail on the merits.

**Ground One - Ineffective Assistance of Counsel**

"[A] defendant who alleges ineffective assistance of counsel following the entry of a guilty plea has an even higher burden to meet." Hill v. Lockhart, 474 U.S. 52, 53-59 (1985). The Supreme Court has announced the two part test to determine ineffectiveness of counsel. First, "[w]hen a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." Strickland v. Washington, 466 U.S. 668, 687-688 (1984). Second, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Thus, in the case of a guilty plea, the defendant must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59 (1985); Hooper v. Garraghty, 845 F.2d 471, 475 (4th Cir. 1988). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. Finally, "in the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively

11

established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements. Otherwise, a primary virtue of Rule 11 colloquies would be eliminated-'permit[ting] quick disposition of baseless collateral attacks,' Blackledge, 431 U.S. at 79 n. 19, 97 S.Ct. 1621 (1977)." Lemaster, 403 F.3d at 221-222. Against this background, the undersigned examines the petitioner's claims.

The petitioner contends that he was rushed into the plea by counsel. He further contends that counsel neither read/discussed the plea agreement with him nor explained the plea agreement to him. Finally, he puts forth that counsel inappropriately advised him to say "Yes" to all of the Court's questions.

### 1. Counsel rushed Petitioner to sign the plea agreement.

The record indicates that petitioner and his attorney signed the plea agreement two days prior to the plea hearing. Moreover, as the respondent notes in its response, petitioner entered his plea several months after his indictment. While the time period between indictment and plea is not dispositive as to whether the petitioner was rushed, the extended duration of the plea process cuts against his argument.

Petitioner has provided nothing other than his own self-serving allegation to suggest that he was rushed to make a decision as to whether to sign the plea agreement or that his attorney's conduct was unreasonable. Moreover, the petitioner does not claim that "but for" being rushed, he would have made a different plea decision. On this ground, the petitioner's claim of ineffective counsel must fail.

### 2. Counsel's failure to read/discuss plea agreement with Petitioner.

The record indicates that during the plea hearing the petitioner stated that he reviewed the plea agreement with his attorney. See CR. dckt. 57, p. 13, l. 7-9. What's more, the plea agreement was signed and ratified by the petitioner and his attorney two days prior to the plea hearing. This contradicts the petitioner's claim that his attorney did not read/discuss the plea agreement with him prior to the plea hearing.

The petitioner has provided no evidence, that his attorney neglected to read or discuss the agreement with him prior to the plea agreement or that his attorney's conduct fell below a reasonable standard. On the strength of the record as a whole, the petitioner's claim of ineffective counsel must fail.

### 3. Counsel's advice to say yes to each question asked at the Rule 11 plea hearing.

On the record, the petitioner is asked several questions throughout the Rule 11 plea hearing. Not all of those questions required a "Yes" answer. Petitioner answered "No" to at least six different questions put to him by the Court. See CR. dckt. 57 at 3, 22-24. Most significantly, the Court asked the petitioner two different times whether he had been forced to plead guilty, to which the petitioner answered "No, Sir." *Id.* at 22-23.

The petitioner has provided no evidence to show that he was forced or otherwise encouraged by his attorney to answer "Yes" to the Court's questions. The record clearly contradicts the petitioner's assertions. Based on the record of the plea hearing, petitioner's claim of ineffective counsel on this ground must fail.

## Ground Two – Denial of Right to Counsel During Presentence Interview

The petitioner contends that the Probation Officer did not notify his attorney of the presentence interview.[3] FED. R. CRIM. P. 32(c)(2), in pertinent part states: "The probation officer who interviews a defendant as part of a presentence investigation must, on request, give the defendant's attorney notice and a reasonable opportunity to attend the interview."

The petitioner asserts he was unaware that he could request his attorney be notified of and given reasonable time to attend the presentence interview. He further points out that during the presentence interview, conducted by telephone, his attorney was not present. However, as the

---

[3] The petitioner notes that the interview was conducted over the phone, by someone who identified themselves as the probation officer, but that he had no way of knowing for sure who she was nor did she have any way to verify his identity. However, the petitioner does not provide an explanation of who the probation officer may have been speaking to other than him. Furthermore, the petitioner neither raised this issue during the objections phase of sentencing, nor at his allocution.

13

respondent notes in its response, petitioner has not alleged that he requested his attorney be present during the presentence interview. The undersigned finds from the record that there is no violation of FED. R. CRIM. P. 32(c)(2) and the petitioner's claim fails on this ground.

### Ground Three – Unfair Sentencing by the Court

The petitioner contends that the sentencing court did not consider his twenty year drug addiction or his cooperation with police when making its sentencing decision. Under 18 U.S.C. § 3553(a), the court must consider a variety of factors in determining the appropriate sentence. The record shows that the Court made note of its full and proper consideration of the § 3553 factors. The record also shows that the Court took into account the petitioner's acceptance of responsibility for the crime he committed by reducing his offense level from 32 to 29. See Sentencing Transcript (CR. dckt. 55) at 9-10. The Court also took note of the petitioner's pre-trial release violations, but did not withdraw the "acceptance" credits which benefitted him. *Id.* at 25. Finally, the record shows that the Court specifically called attention to the fact that the sentence was made in contemplation of the petitioner's drug rehabilitation needs. *Id.*

The petitioner has provided no additional evidence to demonstrate that the Court improperly applied the § 3553 factors. On the strength of the record, and the lack of any additional evidence, the petitioner's claim on this ground must fail.

### Ground Four – The Court's Failure to Verify Petitioner's Understanding of the PSR

The petitioner contends that although the sentencing court asked whether he had received and gone over the PSR with his attorney, it did not verify that Petitioner's attorney explained the PSR to him. Under FED. R. CRIM. P. 32(i)(1)(A), the sentencing Court "must verify that the defendant and the defendant's attorney have read and discussed the PSR and any addendum to the report." As the record shows, and the petitioner concedes, the Court asked the him whether his attorney read and discussed the PSR with him and he stated "Yes," indicating he had. See CR. dckt. 55-1 at p.4, l. 4-6. His contention that the Court's failure to inquire whether his attorney explained the PSR is contradicted by his in court acknowledgment. What's more, the record shows that the petitioner,

through his attorney, entered four objections to the PSR during the sentencing hearing. Two of the objections dealt with correcting personal information (i.e. age, aliases) that the petitioner felt was inaccurate. Such objections could not have been made had counsel not discussed the PSR with the defendant. See CR. dckt. 55 at 6-7. Therefore, this ground fails.

**Ground Five – The Court's alleged assertion that petitioner is due additional appeal rights.**

The petitioner contends that the sentencing court extended additional appeal rights to him when it asked whether he would like an appeal entered on his behalf. The record reflects the following:

> THE COURT: Mr. Mosley, you have the right to appeal the judgment of this Court insofar as that judgment may be appealable. Any notice of appeal must be filed with the clerk not more than ten days from the date of entry of the judgment order.
>
> If you desire counsel on appeal and are unable to afford counsel, the appropriate Court will review your financial affidavit to determine whether to appoint counsel.
>
> If you soe request, the clerk of this Court will prepare and file forthwith a notice of appeal on your behalf. Do you wish to have the clerk file a notice of appeal on your behalf sir?
>
> THE DEFENDANT: Yes, sir.

CR. dckt. 55 at p. 26-27. "After sentencing—regardless of the defendant's plea—the court *must* advise the defendant of any right to appeal the sentence." FED. R. CRIM. P. 32(j)(1)(B) (emphasis added). As discussed above, the petitioner signed a binding plea agreement with the respondent whereby he waived a substantial portion of his appellate and post-conviction rights.

The Court is required to advise the defendant of his right of appeal under FED. R. CRIM. P. 32(j)(1)(B). Advising a defendant of his right to appeal does not modify the existing waiver of appeal rights by reinstating those rights waived or by providing additional appeal rights. Thus, the waiver stands and this ground fails.

## III. Recommendation

For the reasons stated, the undersigned recommends that the petitioner's §2255 motion (CR. dckt. #65, CV. dckt. #1) be **DENIED** and **DISMISSED with prejudice** from the active docket of this court.

Within fourteen (14) days after being served with a copy of this report and recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the Honorable John Preston Bailey, United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to send a copy of this Opinion/Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as shown on the docket, and to counsel of record via electronic means.

DATED: June 2, 2010

JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE